

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

BTK:WPC/CWE
F. #2019R02226

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 25, 2023

<u>By ECF and Email</u>

The Honorable Frederic Block
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>United States v. Timothy Martinez</u>
            <u>Criminal Docket No. 20-98 (S-2) (FB)</u>

Dear Judge Block:

      The government respectfully submits this letter in advance of the defendant Timothy Martinez's sentencing, which is scheduled for September 29, 2023, at 3:00 p.m.

      On May 3, 2023, after a one-week trial, the jury found the defendant, a former police officer with the New York City Police Department, guilty of all four counts of the Superseding Indictment, namely, Count One (Sexual Exploitation of Jane Doe-1, a minor), Count Two (Sexual Exploitation of Jane Doe-2, a minor), Count Three (Attempted Receipt of Child Pornography), and Count Four (Possession of Child Pornography).  Jane Doe-1 and Jane Doe-2 both testified at trial.

      As set forth in the September 19, 2023 Presentence Investigation Report ("PSR"), the defendant's total offense level under the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines") is 46.  PSR at ¶¶ 70 and 110.  Because the total offense level under the Guidelines is capped at 43, that is the effective total offense level.  <u>Id.</u> at ¶ 70 (citing U.S.S.G. Chapter 5, Part A (comment n.2)).  Given an offense level of 43 and a Criminal History Category of I, the advisory Guidelines sentencing range is life.  PSR at ¶¶ 70, 73 and 110.

      For the reasons set forth below, the government respectfully submits that a sentence of no less than 20 years' imprisonment is appropriate in this case and would be sufficient, but not greater than necessary, to achieve the legitimate purpose of sentencing.

I. <u>Relevant Procedural History</u>

Jury selection began on April 24, 2023, and the government presented its case-in-chief fromApril 25 to April 28, 2023. At the close of the government's case, defense counsel made a Rule 29 motion, and Your Honor reserved decision on that request. <u>See</u> April 28, 2023 Tr. 620-624. The defendant called two character witnesses. On May 1, 2023, the parties presented their closing arguments and Your Honor submitted the case to the jury later that day. One May 3, 2023, the jury returned a verdict of guilty on all four counts of the Superseding Indictment.

On August 4, 2023, the defense filed its Rule 29 and 33 motions. The government filed its opposition brief on August 25, 2023. The parties are awaiting decision.

II.     <u>The Offense Conduct</u>

In 2019, the Department of Homeland Security, Homeland Security Investigations ("HSI") began investigating the defendant after receiving a referral from a police department in Texas that identified a Twitter account associated with the defendant as having engaged in sexually explicit conversations with an assumed minor. The evidence at trial demonstrated that the defendant engaged in sexually explicit conversations with an individual whom he believed to be a minor and paid this individual for sexually explicit images and videos depicting minors, possessed images of child pornography, and persuaded Jane Doe -1 and Jane Doe-2 to masturbate and show their genitals and pubic area to him on live video chats. He met both of the minor girls through internet websites where people can meet each other for, among reasons, sexually explicit purposes. The defendant's interactions with minors were not limited to his engaging with Jane Doe-1 and Jane Doe-2, he also had sexually charged communications with numerous other minors as well.

<u>Communications with "MyiaaMyiaa13" on Twitter</u>

The defendant used his Twitter account to exchange numerous sexually explicit communications with an individual he believed was a minor female. Some examples of the defendant's communications included:

- On June 4, 2018, the twitter account "MyiaaMyiaa13" (hereinafter, "Miaa") sent a direct message via twitter to the defendant's account stating, "Fingering vids $30/nsex vids$60/ nCamshow $70/nDancing in panties $35/ nDancing naked$40/n2vids everyday for 2 weeks $100."[1]
- In response, the defendant said, "Ok cash app rite?/nAn can you cam today? I should be home around 11am." Miaa subsequently sent a video message entitled, "http//t.co/jviirbwciu-image/video," and the defendant replied by saying, "Gonna send 60.you send vids here." Additionally, Miaa sent another video message to the

---

[1] Unless otherwise noted, all quote electronic messages are reproduced verbatim.

2

- defendant saying, "http//t.co/qxfebvigha- image/video," and followed up stating, "we can cam later my friend here so you might get girl on girl action." The defendant responded, "I'm getting hard princess." Miaa then asked, "lol u get vid," and the defendant answered, "Yes I did Mmmmm . . . Mmmm damn yummy to bad you weren't in NYC . . . Damn I'm so horney now."

- Later, on June 4, 2018, the defendant asked, "when can you suck mine" referred to his penis, and Miaa replied, "when you come here I got you." Then the defendant said, "Sent ($30 sent via cash app) . . . what day you free" and Miaa responded, by sending the image message "https://t.co/y3wtaprspm" and stating "Everyday lol school out." A few messages later, the defendant stated, "I have SKYPE" and soon after followed up by saying, "TOM.SULLEN." The Skype user names "Tom Sullen" and "Tim Sullen" were used by the defendant in his communications with Jane Doe #1 and Jane Doe #2.

- On June 11, 2018, the defendant sent Miaa a message asking, "Bby can u send me couple pic of you? or you can't cuz ur moms home." Miaa responded by stating, "I'm on my moms phone but I'll show my pussy RQ," and Miaa followed up by sending the following image message "https://t.co/wqsi855jug. Image/vid sent." The defendant replied, "Mmmm that pussy wet . . . Damn rubb that oussy for me . . . To bad u cant video rite quick. Mmmm . . . I wanna cum so bad." Miaa then stated, "cum to this. N u can send $50 to help me out I onlu need $200 more" and provided the following image message "https://t.co/65xwu14347." The defendant followed up by stating, "Im already stroking my fat cock . . . I was bout to send the $50 if I got more."

Communications with Jane Doe-1 on Skype

Additionally, the defendant used his Skype account to exchange sexually explicit communications with Jane Doe-1, a 16-year old girl, who the defendant believed was a minor female, as he attempted to persuade her to masturbate and show him her genitals and pubic area during a video message component of the communication. Some examples of their communications are as follows:

- On October 12, 2016, at approximately 4:41 p.m., Jane Doe-1 asked the defendant, "did you still want to vide chat?" and he replied, "yes go ahead call me" and moments later it appeared that the video chat was connected. The defendant then stated "thr [sic] you are again and the smile . . . mmhhmm cutie" and then asked, "so wht [sic] up hun" and Jane Doe-1 responded, "nm, you?" to which the defendant responded, "besides showing me more cleavage :P." Moments later, the defendant said, "yea I wont just come out an [sic] show you my dick . . . its just rude and disrespectfuk [sic] ya know . . . hey hold on im gonna jum opn [sic] my bed :P . . . better lol . . . thr is the smile again."

3

- Later during the same chat, the defendant continued, "hmmm can you pull your shit down a lil more :P . . . : omg wow . . . I see you biting your lip . . . your nipples hard baby . . . mmm cam down a li [sic]." He then asked, "are yout [sic] tits the only thing that feel good rite [sic] now" and Jane Doe-1 replied, "my u know.." and the defendant requested, "tell me baby mmmm." Jane Doe-1 answered, "my pussy." The defendant then directs Jane Doe-1, "mmm so don't you rub it . . . mmm lean bak [sic] 1 hand on those perfect tits an one on your hot pussy." Jane Doe-1 replied, "you can see my ass tho," and the defendant stated, "mmmmm . . . mmm yes baby."

- On January 19, 2017, at approximately 7:32 a.m., during another Skype chat with Jane Doe-1, the defendant asked, "rule are in place to help you an which on you wanna break [sic]" and Jane Doe-1 replies, "All of them lmao." The defendant responded, "hahahaha bad girl lol." Jane Doe-1 then stated, "But I miss so many things," and the defendant replied, "I remember you telling me but you will get them bak just a bit of tim [sic]." Jane Doe-1 replied, "Yay a . . thanks for being like every other person in the world." The defendant then said, "they looking out for you but yu can do wht you want." Jane Doe-1 replied, "I'm not doing anything . . I'm doing everything I'm told but I'm sorry if it's a little upsetting that I just lost over a year of my childhood. I have one moe year before college and a job and everything else."

Communications with Jane Doe #2 on Skype

The defendant used his Skype account to exchange sexually explicit communications with Jane Doe-2 over a years-long period, starting when she was approximately 13 years old. The defendant believed Jane Doe-2 was a minor female as he attempted to persuade her to masturbate and show her genitals and pubic area during video message communications. Some examples of their communications are as follows:

- On July 12, 2016, at approximately 8:08 a.m., the defendant said to Jane Doe-2, "OMG just got the last pic of you in boy shorts and a bra.... mmmmmmm I'm sorry just got me thinking bak couple years when we 1st started chatting lol." At trial, Jane Doe-2 testified about their prior video messages and what they discussed during years before this message.

The Defendant's Purchases on Cash App

Further, the defendant used an online payment application known as Cash App to send monetary payments to Miaa and two other users with the Snapchat names "The Thickest" and "Wet" to purchase videos of child pornography. For example, on June 1, 2018, the defendant made three payments to "The Thickest" which included, (a) a $25 payment, (b) an $80 payment, and (c) a $150 payment that was labeled for "dinner." Subsequently, on June 4, 2018, the defendant made three payments to Miaa for $ 60, $ 100, and $30, respectively, three payments to "The Thickest," for $25, $ 50, and $ 50, respectively.

<u>The Child Pornography on Defendant's Laptop</u>

The defendant possessed hundreds of images and videos of child pornography on a laptop computer that was seized from the defendant's residence during the execution of a search warrant. Law enforcement agents found hundreds of child pornographic files on the defendant's laptop. Some of the images and videos of child pornography included known victims of child sexual abuse, including the victim in the so-called "Jenny" series, which has circulated widely among pedophiles.

III.   <u>Guidelines Calculation</u>

The government agrees with the Guidelines calculation set forth by the United States Probation Department ("Probation") in the PSR, which is below:

<u>Counts 1 and 2 (Sexual Exploitation of Jane Doe-1)</u>

| | |
|---|---|
| Base Offense Level (§2G2.1(a)) | 32 |
| Plus:  defendant used a computer (§ 2G2.1(b)(6)) | +2 |
| Total: | <u>34</u> |

<u>Count 2 (Sexual Exploitation of Jane Doe-2)</u>

| | |
|---|---|
| Base Offense Level (§2G2.1(a)) | 32 |
| Plus:  minor at least 12 but less than 16 years old (§ 2G2.1(b)(1)(B)) | +2 |
| Plus:  defendant used a computer (§ 2G2.1(b)(6)) | +2 |
| Total: | <u>36</u> |

<u>Counts 3 and 4 (Attempted Receipt and Possession of Child Pornography)</u>

| | |
|---|---|
| Base Offense Level (§2G2.1(a)) | 22 |
| Plus:  defendant possessed images of minor younger than 12-years-old (§ 2G2.1(b)(2)) | +2 |
| Plus:  defendant possessed images of prepubescent minor involved in portrayal of sadistic or masochistic conduct or violence (§ 2G2.2(b)(4)) | +4 |
| Plus:  defendant engaged in pattern of activity involving the sexual exploitation | |

5

|  |  |
|---|---:|
| of a minor (§ 2G2.2(b)(5)) | +5 |
| Plus: defendant used interactive service to receive videos and images of child pornography (2G2.2(b)(6) | +2 |
| Plus: defendant possessed more than 600 images of child pornography (§ 2G2.2(b)(7)(D) | +5 |
| Minus: defendant's conduct limited to receipt or solicitation of child pornography (§ 2G2.2(b)(1)) | -2 |
| Total: | <u>38</u> |
| Greater of the Adjusted Offense Levels Above: | 38 |
| Multiple Count Adjustment (§ 3D1.4): | +3 |
| Combined Adjusted Offense Level: | <u>41</u> |
| Chapter Four Enhancement: (§ 4B1.5(b)(1)) | +5 |
| Final Total Offense Level: [2] | <u>46</u> |

Given this offense level and a Criminal History Category of I, the applicable Guidelines range is life imprisonment.

### Statutory Minimum Term Of Imprisonment

The defendant is also subject to a mandatory minimum term of imprisonment of 15 years on Count One and Count Two. The statutory minimum term of imprisonment on Count Three is 5 years. Count Four has not statutory minimum sentence.

### Statutory Maximum Term Of Imprisonment

For Count One and Count Two, the statutory maximum term of imprisonment is 30 years for each Count. Four Count Three, the statutory maximum term of imprisonment is 20 years. For Count Four, the statutory maximum term of imprisonment is 10 years.

IV.   A Sentence of 240 Months Is Appropriate

---

[2]   Pursuant to Chapter 5, Part A (comment n.2), where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43.

6

### A. Legal Standard

In <u>United States v. Booker</u>, the Supreme Court held that the Guidelines are advisory and not mandatory, and the Court made clear that district courts are still "require[d] . . . to consider Guidelines ranges" in determining sentences, but also may tailor the sentence in light of other statutory concerns. 125 S. Ct. 738, 743 (2005); <u>see</u> 18 U.S.C. § 3553(a). Subsequent to <u>Booker</u>, the Second Circuit held that "sentencing judges remain under a duty with respect to the Guidelines . . . to 'consider' them, along with the other factors listed in section 3553(a)." <u>United States v. Crosby</u>, 397 F.3d 103, 111 (2d Cir. 2005). Although the Court declined to determine what weight a sentencing judge should normally give to the Guidelines in fashioning a reasonable sentence, the Court cautioned that judges should not "return to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." <u>Id</u>. at 113.

Later, in <u>Gall v. United States</u>, the Supreme Court elucidated the proper procedure and order of consideration for sentencing courts to follow: "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented." <u>Id</u>. at 49-50 (citation and footnote omitted).

With the Guidelines as the "starting point and the initial benchmark," the Court should next consider the factors set forth by Congress in § 3553(a). Id. That statute provides that a Court should consider a number of factors when determining a defendant's sentence, including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; and

(2) the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. §§ 3553(a)(1) and] (2). As set forth below, i analysis of the § 3553(a) factors, in particular, the nature and circumstances of the offense—which, to date, the defendant has not accepted responsibility for—in conjunction with the need to deter both the defendant and others from engaging in the destructive and despicable conduct that the defendant engaged in for years, which targeted the most vulnerable members of the community, overwhelmingly weighs in favor of a substantial sentence for this particular

defendant, whose history and characteristics should have lead him away from such egregious conduct. Instead, of adhering to his vow to protect the public, the defendant engaged in predatory tactics against children. In light of the sentencing factors set forth by Congress in § 3553(a), the government respectfully submits that a sentence of 20 years in prison is warranted in this case.

      B.  <u>Argument</u>

The Court's "starting point and the initial benchmark" when determining the defendant's sentence should be the Guidelines range of life imprisonment. <u>Kimbrough v. United States</u>, 552 U.S. 85, 108 (2007) (citing <u>Gall</u> at 50 and <u>Rita v. United States</u>, 168 L. Ed. 203, 213 (2007)).

As an initial matter, with respect to § 3553(a)(1), sexually exploiting children is among the most serious of crimes. The immediate and long-term damage caused to victims of such conduct is difficult to comprehend. This defendant's crimes are particularly heinous. The defendant sought his prey on Internet looking for vulnerable minors. When he found one, he determined whether they were particularly vulnerable, such as in the case at trial, minors who were sexually abused or undergoing other physical or psychological trauma that he could exploit. From the perspective of the victim, the defendant befriended them and was a trusted online companion. The defendant continued to abuse and exploit his victims all the while cynically feigning friend. The abuse stopped, not through the defendant's volition, but because the victims stopped it. As the trial showed, the defendant would have undoubtedly abused his victims for years.

The government respectfully submits that the Court should impose a sentence of no less than 20 years' imprisonment because such a sentence is appropriate to account for the "nature and circumstances of the offense" and to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(1)-(2)(A). Such a sentence will also promote specific and general deterrence. <u>See</u> <u>id.</u> at § 3553(a)(2)(B).

      1.  <u>Nature and Circumstances of the Offense</u>

The defendant sought out on the Internet and obtained many photographs of minor girls being sexually abused. These were not mere titillating photographs. They were photographic evidence of child sexual abuse that the defendant sought and obtained. And, in paying for them, he became part of a marketplace of purchases that makes the sexual abuse of children a profitable endeavor. For this alone he should be sternly punished.

But, the defendant was not satisfied with static images of child pornography, images of child sexual abuse. No, the defendant wanted a more interactive experience with real-life minors that he could abuse. So, again, he went to the Internet. There, he found sites where he could meet his prey— sites such as Omegle— where minors suffering from trauma can be snatched without a fee. The only price was the effort needed to convince them to

perform. In this regard, the defendant was well-versed. He found at least two minor girls — girls suffering from trauma that he could exploit. And, he convinced his victims that he cared for them—he groomed them. He treated them as marionettes and pulled the strings for his own sexual pleasure. This was not a one-time event. The defendant engaged in his sadistic behavior for years, which ceased when the minor children had the courage to stop the abuse. Against this backdrop a sentence of 20 years' imprisonment is eminently justified.

2. <u>History and Characteristics of the Defendant</u>

The defendant's history and characteristics only further militate in favor of a substantial sentence. First, the defendant was a New York City Police Officer. And, he was a Sergeant in the United States Army Reserve. He swore an oath to protect and serve the community. Instead, he was a predator hiding in plain sight.

The defendant, as a New York City Police Officer, was a mandatory reporter of child abuse. He was obligated to protect children, to look out for their best interest and to defend them from pedophiles like himself. Instead of upholding that standard and fulfilling his role as a Police Officer, the defendant used the knowledge he acquired through interacting with children to develop his grooming skills and ultimately sexually exploit vulnerable minors. He was masterful in gaining the trust of his victims, enabling him to draw them closer, capitalize on their desire for acceptance and then entice them to give him what he wanted out of the relationship, images and videos of child abuse that he commissioned.

To be sure, the defendant did not have any prior criminal convictions and appears to have had supportive family. Indeed, his mother appeared in court most, if not, every trial day. But that only makes the defendant's abhorrent conduct more egregious. Other than his prurient self-interest, there was no reason for the defendant to perpetrate the market for child abuse.

In any event, the vast majority of federal child pornography offenders have no prior records at the time that they are sentenced.[3] Moreover, any potentially mitigating value attributable to the defendant's having never been caught before now, is entirely illusory. This is because, as the trial evidence showed, the defendant exploited children for years and would have continued unabated had his deviant conduct not been ferreted by law enforcement. This defendant exploited at least two minor girls and sought out child pornography from Miyaa, who he believed was a minor. His protracted behavior was the product of considerable planning and daily, if not hourly, conscious decisions to manipulate and victimize children. As such, his lack of criminal history is wholly immaterial.

---

[3] U.S. Sentencing Commission, Report to Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System 320 (2011) available at http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Mandatory_Minimum_Penalties/20111031_RtC_Mandatory_Minimum.cfm.

Additionally, although the defendant appears to have a supportive family and to have benefited from a healthy and abusive-free upbringing, these stabilizing and normalizing forces were already present in the defendant's life when he committed the crimes of which he now stands convicted. Indeed, when the defendant was sexually exploiting children online, he was fully employed as a Police Officer and married. Additionally, he served as an Army Reservist. In other words, the defendant was raised with every benefit, free from abuse, and he still chose a life of sexually abusing others. As a result, to the extent that a lack of criminal history and supportive family should be considered as part of his sentence, these factors actually militate in favor of a substantial sentence.

3. Seriousness of the Offense and Deterrence

Consideration of Section 3553(a)(2), the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment for the defendant and promote respect for the law, likewise weighs in favor of a substantial sentence. As previously noted, the defendant's conduct was deliberate, compulsive, pervasive and affected a wide range of children. To the extent the defendant argues at sentencing, as he has in the past, that online sexual exploitation is somehow less culpable or less serious than physical sexual exploitation, this Court should reject that argument. As evidenced by the trial testimony, and as the government anticipates the victim impact statements as sentencing will show, the most damaging aspect of child exploitation is the mental and psychological manipulation of a child to create harmful images and videos. The victims in this case are now acutely aware of the way in which they were manipulated by the defendant, who they thought was someone else. They are further aware that they were lured by him into a false sense of security, and then as a result of his actions, they themselves created sexually explicit material for him. For victims to live with the knowledge that they participated—albeit as a result of masterful manipulation and grooming—in their own victimization is what makes this type of child exploitation, commonly referred to as production, so harmful to the actual victims. And the fact remains that once these images and videos are produced, regardless of whether a contact offense has occurred or not, they exist in perpetuity.

Similarly, the need for the sentence imposed to promote respect for the law, provide just punishment to the defendant and promote general and specific deterrence, likewise supports a substantial sentence. Here, the defendant disguised his identity and used Omegle and other websites frequented by minors, to gain access to children and child exploitation material. Today, there are countless applications that can and are used by pedophiles to engage in the very same crimes as those committed by the defendant. The pool of vulnerable minors on these applications grows larger everyday as children increasingly access and use the Internet. Indeed, in a report published in 2021, the United States Sentencing Commission observed that "a growing proportion of production offenders exploit victims remotely through the use of the internet and mobile devices."[4] According to the

---

[4] United States Sentencing Commission (2021), Federal Sentencing of Child Pornography: Production Offenses, at 1, 35, available at

10

same report, "the expansion of digital and mobile technology has contributed to a 422 percent increase in the number of production offenders sentenced over a 15-year period, from 98 offenders in fiscal year 2005 to 512 offenders in fiscal year 2019." Id. at 3. In light of the increasing frequency at which these crimes are being committed, it is important for the public to be aware that predators like the defendant, who seek out victims in this arena, to understand that their crimes—which are just as harmful as hands-on sexual offenses—will be punished commensurate with their seriousness. Thus, a lengthy sentence in this case would send a strong message to those, both domestically and abroad, who seek to sexually exploit children online, that the courts will not tolerate the sexual abuse of children and that the consequences for such criminal conduct will be significant.

Finally, a sentence of no less than 20 years' incarceration is consistent with the sentences imposed in this district in comparable cases. Indeed, according to the Child Pornography Production Report, based on a review of federal sentences imposed in 2019, the average sentence for offenders who sexually exploited minors was 275 months' incarceration, and the average sentence for offenders who engaged in remote production as the defendant did here, was 234 months' incarceration United States Sentencing Commission (2021), Federal Sentencing of Child Pornography: Production Offenses, at 1, 35, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf at 50. The Commission also found that courts imposed longer than average sentences when various factors were present, many of which are also present in the defendant's case, including that: victims engaged in sexual contact alone, including self-contact, id. at 47; the defendant's use of coercive tactics and enticements, id. at 48; and the defendant's pattern of sexual exploitation of children, id. at 50.

### 4. Promote Respect for the Law and Provide Just Punishment

A sentence of no less than 240 months should be imposed to reflect the seriousness of the offense, promote respect for the law and provide just punishment. Such a sentence would be consistent with sentences meted out to other, similarly-situated defendants in this District:

> i. In United States v. Caroleo, 17-CR-177 (S-1) (Vitaliano, J.), the defendant pleaded guilty to sexual exploitation of a minor. The defendant enticed a 14-year-old girl to produce sexually explicit images of herself and send those images to the defendant using an

---

https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20211013_Production-CP.pdf (the "Child Pornography Production Report") ("For example, over one-third (35.4%) of production offenders sentenced in fiscal year 2019 were internet strangers who met their victims through an online platform, more than double the proportion of offenders sentenced in fiscal year 2010 who met their victims online (14.3%).").

11

        Internet application. The defendant engaged in sex chats with at least nine minors. The defendant was sentenced to 360 months' imprisonment.

  ii.  In <u>United States v. Randazzo</u>, 14-CR-189 (Chen, J.), the defendant, a former sergeant with the New York City Police Department, pleaded guilty to two counts of conspiracy to sexually exploit a child and one count of receipt of child pornography. The defendant targeted women online and would persuade them to sexually abuse their children so he could watch. At least five women engaged in this conduct and the victims were from a few months old to eight years old. The defendant also traveled out of state to watch two victims be molested in person and had an eight-year-old victim drugged so they wouldn't remember the abuse. The defendant was sentenced to 28 years' imprisonment.

  iii.  In <u>United States v. Deutsch</u>, 18-CR-502 (S-1) (FB), the defendant, a former high school teacher, was found guilty after trial of four counts of sexual exploitation of a minor and six counts of attempted sexual exploitation for a minor. For two years, the defendant lured vulnerable minors into sending him sexually explicit photos and videos. The defendant was sentenced to 20 years' imprisonment.

V.    <u>Conclusion</u>

For the reasons set forth above, the government respectfully requests that the court impose a sentence of not less than 20 years' imprisonment.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:   /s/William P. Campos
       William P. Campos and
       Chand Edwards-Balfour
       Assistant U.S. Attorneys
       (718) 254-6104/6238

cc:    Peter E. Brill, Esq. (by ECF)
       Counsel for defendant Timothy Martinez

       Clerk of the Court (FB) (by ECF)